**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons, Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

**SHENAQ PC**
Amir Shenaq, Esq.*
3500 Lenox Rd. Ste 1500
Atlanta, GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

*Pro hac vice* forthcoming

*Counsel for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL RYAN and MICHELLE PIMENTEL, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GOOD FAT CO. LTD.,<br><br>Defendant. | CASE NO. 3:22-cv-03391-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: March 2, 2023<br>Time: 10:00 a.m.<br>Courtroom: 4<br>Judge: Hon. Vince Chhabria |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     EXAMINING THE PRODUCT ............................................................... 2

III.    ARGUMENT .......................................................................................... 2

    A.      Plaintiffs Plead Unlawful Conduct under the UCL's Unlawful
        Prong Because Defendant Violates the FDCA and the Sherman
        Act. ......................................................................................................... 2

    B.      Plaintiffs Plead Deceptive, Misleading, Unfair, and Fraudulent
        Conduct under the UCL, CLRA, and the FAL Based on
        Defendant's Omissions. ....................................................................... 4

    C.      Defendant's "Good Fats" Claim on the Product Is Deceptive to a
        Reasonable Consumer Because It Misleadingly Implies that the
        Product Is Healthy to a Reasonable Consumer. ............................... 6

        1.      The "Good Fats" claim is not puffery. ................................. 8

        2.      Claims premised on the "Good Fats" representation are
            not preempted. ...................................................................... 11

        3.      The claims based on the "Good Fats" representation are
            not premised on a substantiation theory. .......................... 15

    D.      Claims related to marketing outside of the Product's label are
        relevant. .............................................................................................. 16

    E.      Plaintiffs Have Standing for Injunctive Relief. ............................. 17

    F.      Plaintiffs Have Standing to Bring All Claims Because Defendant
        Confuses Potential Class Certification Issues as Standing Issues. ...... 19

IV.     CONCLUSION ...................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**

*Ackerman v. Coca-Cola Co.,*
      2010 WL 2925955 (E.D.N.Y. July 21, 2010) ........................................................ 16

*Arora v. GNC Holdings, Inc.,*
      No. 19-CV-02414-LB, 2019 WL 6050750 (N.D. Cal. Nov. 15, 2019) ........................ 6

*Astiana v. Hain Celestial Grp., Inc.,*
      783 F.3d 753 (9th Cir. 2015) ......................................................................... 14

*Balser v. Hain Celestial Grp., Inc.,*
      640 F. App'x 694 (9th Cir. 2016) ....................................................................... 8

*Bell v. Publix,*
      982 F.3d 468 (7th Cir. 2020) ..................................................................... 10, 14

*Brazil v. Dole Food Co., Inc.,*
      No. 12-CV-01831-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) .................... 9

*Brazil v. Dole Packaged Foods, LLC,*
      660 F. App'x 531 (9th Cir. 2016) ....................................................................... 8

*Brown v. Natures Path Foods, Inc.,*
      No. 21-CV-05132-HSG, 2022 WL 717816 (N.D. Cal. Mar. 10, 2022) .................... 18

*Brown v. Van's Int'l Foods, Inc.,*
      No. 22-CV-00001-WHO, 2022 WL 1471454 (N.D. Cal. May 10, 2022) .................. 18

*Bruton v. Gerber Prod. Co.,*
      No. 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ........................ 7

*Chapman v. Skype,*
      220 Cal. App. 4th 217 (2013) ........................................................................... 6

*Clancy v. The Bromley Tea Co.,*
      308 F.R.D. 564 (N.D. Cal. 2013) ..................................................................... 13

*Coe v. Gen. Mills, Inc.,*
      2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ...................................................... 11

*Colucci v. ZonePerfect Nutrition Co.*,
  2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ............................................................ 20

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ...................................................................................... 5

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ...................................................................................... 17

*Davidson v. Sprout Foods Inc.*,
  No. 22-CV-01050-RS, 2022 WL 2668481 (N.D. Cal. July 11, 2022) ....................... 22

*Escobar v. Just Born Inc.*,
  2017 WL 5125740 (C.D. Cal. June 12, 2017) ............................................................. 7

*Fagan v. Neutrogena Corp.*,
  2014 WL 92255 (C.D. Cal. Jan. 8, 2014) .................................................................... 7

*Florida Lime & Avocado Growers v. Paul*,
  373 U.S. 132 (1963) ................................................................................................... 12

*Garner v. Glob. Plasma Solutions*,
  590 F. Supp. 3d 738 (D. Del. 2022) ............................................................. 19, 21, 22

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................. 10, 11

*Holk v. Snapple Beverage Corp.*,
  575 F.3d 329 (3d Cir. 2009) ...................................................................................... 12

*In re Milo's Dog Treats Consol. Cases*,
  9 F. Supp. 3d 523 (W.D. Pa. 2014) ........................................................................... 11

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
  555 F. Supp. 3d 829 (N.D. Cal. 2021) ....................................................................... 22

*Jensen v. Natrol, LLC*,
  No. 17-CV-03193-VC, 2017 WL 11645769 (N.D. Cal. Sept. 22, 2017) ................... 15

*Johnson-Jack v. Health-Ade LLC*,
  587 F. Supp. 3d 957 (N.D. Cal. 2022) ......................................................................... 9

*Jones v. Nutiva, Inc.,*
　　2016 WL 5210935 (N.D. Cal. Sept. 22, 2016)............................................... 11, 12, 14

*Jones v. Nutiva, Inc.,*
　　2017 WL 3617104 (N.D. Cal. Aug. 23, 2017) ............................................ 10, 12, 14

*Jou v. Kimberly-Clark Corp.,*
　　2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ............................................................ 7

*Kordel v. U.S.,*
　　335 U.S. 345 (1948) ................................................................................................. 16

*Krommenhock v. Post Foods, LLC,*
　　No. 16-CV-04958-WHO, 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018)................... 15

*Langan v. Johnson & Johnson,*
　　897 F.3d 88 (2d Cir. 2018) ..................................................................................... 22

*Mayor of Baltimore v. Actelion Pharma. Ltd.,*
　　995 F.3d 123 (4th Cir. 2021)................................................................................... 23

*Miller v. Ghirardelli Chocolate Co.,*
　　912 F. Supp. 2d 861 (N.D. Cal. 2012) .................................................................... 20

*Moore, v. GlaxoSmithKline,*
　　No. 20-CV-09077-JSW, 2021 WL 3524047 (N.D. Cal. Aug. 6, 2021) ............... 17, 18

*Morrison v. YTB Int'l, Inc.,*
　　649 F.3d 533 (7th Cir. 2011).................................................................................... 23

*Munsell v. Colgate-Palmolive Co.,*
　　463 F. Supp. 3d 43 (D. Mass. 2020)........................................................................ 20

*Newcal Indus., Inc. v. Ikon Office Solution,*
　　513 F.3d 1038 (9th Cir. 2008).................................................................................... 9

*Patriotic Veterans, Inc. v. Indiana,*
　　736 F.3d 1041 (7th Cir. 2013).................................................................................. 12

*Plumley v. Massachusetts,*
　　155 U.S. 461 (1894) ................................................................................................. 12

*Quinn v. Walgreen Co.*,

    958 F. Supp. 2d 533 (S.D.N.Y. 2013) ....................................................... 19

*Reid v. Johnson & Johnson*,

    780 F.3d 952 (9th Cir. 2015) ............................................................... 3, 5

*Salazar v. Honest Tea, Inc.*,

    2015 WL 75223 (E.D. Cal. Jan. 6, 2015) ................................................... 8

*Shank v. Presidio Brands, Inc.*,

    No. 17-CV-00232-DMR, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) ............. 18, 21

*Soo Line R.R. Co. v. Werner Enterprises*,

    825 F.3d 413 (8th Cir. 2016) ................................................................ 12

*Vanlaningham v. Campbell Soup Co.*,

    492 F. Supp. 3d 803 (S.D. Ill. 2020) ...................................................... 13

*Vassigh v. Bai Brands LLC*,

    No. 14-CV-05127-HSG, 2015 WL 4238886 (N.D. Cal. July 13, 2015) ............... 9, 13

*Vizcarra v. Unilever United States, Inc.*,

    No. 4:20-CV-02777-YGR, 2020 WL 4016810 (N.D. Cal. July 16, 2020) ................ 18

*Williams v. Gerber Prod. Co.*,

    552 F.3d 934 (9th Cir. 2008) ............................................................. 1, 7

**STATUTES**

21 U.S.C. § 321 ................................................................................. 16

21 U.S.C. §§ 343(a) ........................................................................ 12, 14

**RULES**

Fed. R. Civ. P. 23 ............................................................................. 22

**REGULATIONS**

21 C.F.R. § 101.13 ........................................................................... 3, 8

21 C.F.R. § 101.9 ........................................................................... 4, 14

**OTHER AUTHORITIES**

56 Fed. Reg. 60372 (1991) ............................................................................ 10

Louis Altman and Malla Pollack, 1A CALLMANN ON UNFAIR COMP., TRADEMARKS & MONOPOLIES § 5:9 (4th Ed.2009) ............................................................ 16

Sarah E. Taylor, and Harold J. Feld, *Promoting Functional Foods and Nutraceuticals on the Internet*, 54 Food & Drug L.J. 423 (1999) ........................... 16

## I. INTRODUCTION

Defendant exploits consumers' preference for healthier products by representing to consumers that its Product is healthy, healthful, better for them, and a healthier alternative to competing products. To bolster this representation, Defendant artfully omits mandatory disclosures that would alert consumers to the dangerously high levels of saturated fat contained in the Product. Reasonable consumers, including Plaintiffs, interpret the entire label and the "Good Fats" representation to mean that the Product consists of healthy fats and not dangerously high levels of saturated fat. Instead of the healthy food product that Defendant represents, consumers receive a Product that primarily consists of saturated fats at dangerously high levels.

This is a simple case, and "[t]he facts of this case…do not amount to the rare situation in which granting a motion to dismiss is appropriate." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Defendant presents multiple arguments seeking dismissal, but ultimately a single question drives the outcome. Under the standard of review for this motion, the only way Defendant's Motion can be granted in part is if the Court holds that no reasonable consumer could interpret the Product's label as meaning the Product is healthful, healthy, consisting of healthy fats, and a healthier alternative to competitors. If the Court believes a reasonable consumer **could** interpret these representations to mean that the Product is healthy or primarily consists of healthy fats:

- Plaintiffs' UCL claims survive and the Motion is Denied;
- Plaintiffs' FAL claims survive and the Motion is Denied;
- Plaintiffs' CLRA claims survive and the Motion is Denied;

– 1 –

- Plaintiffs' consumer claims survive and the Motion is Denied; and
- Plaintiffs' unjust enrichment claim survives and the Motion is Denied.

## II. EXAMINING THE PRODUCT

Viewed in its entirety, the Product is covered by numerous nutrient content claims. Defendant's goal is to induce reliance based on these nutrient content claims.

The Product contains four nutrient content claims. F.A.C. ¶¶ 28, 30-32. It contains nutrient content claims concerning (1) the amount of protein (i.e. "7g Protein"), (2) the amount of sugar (i.e. "ONLY 2g Sugar"), (3) the amount of net carbohydrates (i.e. "5g NET CARBS"), and (4) the "Good Fats" present therein. *Id*.

Although the Product contains numerous nutrient content claims combined with excess levels of saturated fat, Defendant fails to include mandatory disclosure language which alerts consumers to these dangerously high levels. F.A.C. ¶¶ 82-84. Thus, all the nutrient content claims contained on the Products are unlawful, deceptive, fraudulent, and unfair marketing statements.

## III. ARGUMENT.

### A. Plaintiffs Plead Unlawful Conduct under the UCL's Unlawful Prong Because Defendant Violates the FDCA and the Sherman Act.

Defendant commits numerous violations of law. Because the Products contain high levels of saturated fat, every nutrient content claim on the Product's packaging is unlawful because Defendant fails to include mandatory disclosure statements. In other words, while the majority of Defendant's brief focuses on its belief that "good" is not the same as "healthy," that argument is not dispositive. Even if Defendant prevails on that argument, the Products are still unlawful and deceptive because they

fail to include mandatory disclosure statements concerning the high levels of saturated fat present in the Products.

Defendant uses numerous nutrient content claims focused on sugar, protein, and carbohydrate content on the Products. F.A.C. ¶ 32. All of these nutrient content claims are unlawful because Defendant fails to include mandatory disclosures. F.A.C. ¶¶ 33, 83-85, 102-113.

A nutrient content claim is a claim that "expressly or implicitly characterizes the level of a nutrient." 21 C.F.R. § 101.13(b). In this case, the Product contains numerous express nutrient content claims combined with the "good fats" implied nutrient content claim. "Nutrient content claims are not permitted on food labels" and must instead satisfy all of the requirements of § 101.13 before being authorized to appear at all. *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015).

If a manufacturer does not want to alert consumers that its product contains dangerously high levels of saturated fat, then it shall not make any nutrient content claims. The regulation governing nutrient content claims, section 101.13, makes this clear. Section 101.13(b) states that "a nutrient content claim[] may not be made on the label . . . unless the claim is made in accordance with this regulation [i.e., § 101.13] . . . ." In other words, a manufacturer may not make any nutrient content claims on their products unless they have complied with the requirements. Because the Product contains more than 4.0g of saturated fat and makes nutrient content claims, it is required to comply with the disclosure requirements outlined in 21 CFR 101.13(h):

If a food…contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less or 2 tablespoons or less, per 50 g (for dehydrated foods that must be reconstituted before typical consumption with water or a diluent containing an insignificant amount, as defined in § 101.9(f)(1), of all nutrients per reference amount customarily consumed, the per 50 g criterion refers to the "as prepared" form), then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for ____ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

Because the Defendant makes nutrient content claims without including mandatory disclosure statements, the Defendant violates the UCL's unlawful prong. At a minimum the Products are misbranded because they contain unlawful nutrient content claims. Additionally, as described herein, they are misbranded because the nutrient content claims – including the "good fat" claim – are false and deceptive.

### B. Plaintiffs Plead Deceptive, Misleading, Unfair, and Fraudulent Conduct under the UCL, CLRA, and the FAL Based on Defendant's Omissions.

Defendant's use of nutrient content claims, and its failure to include the mandatory disclosure statement is not only unlawful but also deceptive. If a food product contains more than 4 grams of saturated fat and wishes to make nutrient content claims, it "must bear a statement disclosing that the nutrient exceeding the specified level is present in the food…." 21 C.F.R. § 101.13(h).

Under California law, a fraudulent omission is actionable if the omitted facts are "contrary to a representation made by the defendant, or [the] omission [is] of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144

– 4 –

Plaintiffs' Opposition to Defendant's Motion to Dismiss Complaint
*Ryan, et al, v. The Good Fat Co. Ltd.*, No. 3:22-cv-03391-VC

Cal. App. 4th 824, 835 (2006). Here, both are present. First, Defendant's use of "good fats" is contrary to the fact that it contains dangerously high levels of saturated fat which is masked by the failure to include the disclosure statement. Second, Defendant was obligated to include the disclosure statement because it makes nutrient content claims throughout the Product's packaging. *See* F.A.C. ¶¶ 108-113.

The FDA considers nutrient content claims to be "a marketing activity." *See* 56 Fed. Reg. 60372 (1991). Further, the FDA has long been suspicious of nutrient content claims and has repeatedly stated that such claims can be misleading, so the rules that govern them are far more restrictive. Indeed, "the general rule is that 'nutrient content claims' are not permitted on food labels" and must instead satisfy all of the requirements of § 101.13 before being authorized to appear at all. *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). FDA regulations specifically condition the ability to make nutrient content claims on compliance with the rules governing Section 101.13. Section 101.13(h), in particular, sets forth special rules for nutrient content claims that are made when a product also contains high levels of saturated fat. If a manufacturer does not want to alert consumers that a product contains dangerously high levels of saturated fat, then it shall not make any nutrient content claims.

Defendant's use of nutrient content claims, while omitting the required disclosure statement is misleading. Had Defendant complied with the law, the disclosure statement would have revealed that the Products contain dangerously high levels of saturated fat. The disclosure statement would have placed the numerous nutrient content claims in proper context. In other words, the Defendant broadcasts

all of the Product's benefits without providing the mandatory disclosures concerning the negative aspects. This is textbook deception. *See Arora v. GNC Holdings, Inc.*, No. 19-CV-02414-LB, 2019 WL 6050750, at *11 (N.D. Cal. Nov. 15, 2019) (holding that failing to include a mandatory disclaimer on a dietary supplement is misleading).

Defendant's duty not to mislead consumers about the quality or nutritional value of the Products does not stem from either the FDCA or California's Sherman Law. Instead, that duty stems from traditional California prohibitions on misleading and deceptive advertising (including prohibitions on fraudulent omissions) that long predate the FDCA or Sherman Law, including the UCL's fraud prong, the CLRA, the FAL, and the common law tort of fraud. In making numerous nutrient content claims and failing to include the required disclosure statement, Defendant has violated this duty.

## C. Defendant's "Good Fats" Claim on the Product Is Deceptive to a Reasonable Consumer Because It Misleadingly Implies that the Product Is Healthy to a Reasonable Consumer.

Defendant's "good fats" representations on the Product are deceptive. Plaintiffs' consumer fraud claims are analyzed under the "reasonable consumer" test. The reasonable consumer is "neither the most vigilant and suspicious of advertising nor the most unwary or unsophisticated, but instead is the ordinary consumer with the target population. *Chapman v. Skype*, 220 Cal. App. 4th 217, 226 (2013). This is an objective standard. A plaintiff asserting violations based on consumer fraud need "only to show that members of the public are likely to be deceived. *Chapman*, 220 Cal. App. 4th at 226. At the motion to dismiss stage, "the relevant inquiry is not what the consumer actually believes, but whether Plaintiff has plausibly pleaded facts

– 6 –

GOOD GUSTAFSON AUMAIS LLP

indicating what a reasonable consumer could believe." *Escobar v. Just Born Inc.*, 2017 WL 5125740, at *10 n.5 (C.D. Cal. June 12, 2017); *see also Williams*, 552 F.3d at 940 (reversing the district court's dismissal of the plaintiff's complaint and finding that, "given the opportunity, [the plaintiffs] have stated a claim and could plausibly prove that a reasonable consumer would be deceived by the Snacks packaging").

Courts have also clarified that the reasonable consumer test must be evaluated from the vantage of a reasonable consumer, not the vantage of the defendant. *See Fagan v. Neutrogena Corp.*, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014) (Defendant's argument that the representations are literally true because the term '100%' only applies to the ingredients in the products that provide protection from the sun (and not to other ingredients in the lotions that serve other purposes) rests on one possible interpretation of the language, but it is not the only possible interpretation."). Thus, whether reasonable consumers would adopt a defendant's interpretation or plaintiff's interpretation should not be resolved on the pleadings. *See id.*; *see also Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013) ("Whether a reasonable consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion.); *Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *10 (N.D. Cal. Jan. 15, 2014).

The Ninth Circuit has at least twice reversed dismissal on the pleadings where the court adopted a defendant's interpretation over a plaintiff's reasonable interpretation. *See Williams*, 552 F.3d at 938; *Balser v. Hain Celestial Grp., Inc.*, 640

GOOD GUSTAFSON AUMAIS LLP

F. App'x 694, 696 (9th Cir. 2016). In those decisions, the Ninth Circuit held that "[w]hether a business practice is deceptive, misleading, or unfair is ordinarily a question of fact to be decided by a jury," and that it is only "the rare situation" in which that issue can be resolved on the pleadings. *Balser*, 640 F. App'x at 696; *Williams*, 552 F.3d at 938- 39; *see also Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir. 2016) (reversing summary judgment for defendant in "natural" labeling case due to question of fact over the reasonable consumer standard). Simply, the reasonable consumer's interpretation of "good fats" is a question of fact that can only be resolved at this stage in extremely limited circumstances. The case *sub judice* is not one of these limited scenarios.

Defendant's "good fats" representation that the Product is healthy and consists of healthy fats is deceptive because the Product contains high levels of unhealthy fats, and this deception is further aggravated by Defendant's failure to include the mandatory disclosure statement alerting consumers to these dangerous levels of saturated fat.

Defendant claims that "good fats" is puffery, preempted, based on substantiation, and not deceptive. As described herein, its analysis is incorrect for all four arguments.

       1.     **The "Good Fats" claim is not puffery.**

The "Good Fats" claim is not puffery. Rather, it is a nutrient content claim concerning the purported "healthy" fats contained within the Product. Implied nutrient content claims may exist even when specific "magic" words like "high," "low," or "healthy" are not used. *See* 21 C.F.R. § 101.13(b)(4) ("synonyms are permitted"); *Salazar v. Honest Tea, Inc.*, 2015 WL 75223, at *5 (E.D. Cal. Jan. 6, 2015) (finding

the undefined phrase "packed with [an antioxidant]" to be a nutrient content claim).

Multiple courts within this District have similarly held that undefined words may

form nutrient content claims when viewed through the context of the entire label. *See*

*Vassigh v. Bai Brands LLC*, No. 14-CV-05127-HSG, 2015 WL 4238886, at *7 (N.D.

Cal. July 13, 2015) ("the Court finds that the statements that [products] are

'Antioxidant Packed' or are an 'Antioxidant Packed Beverage'—which plausibly imply

a particular level of antioxidants contained in the product—constitute nutrient

content claims and are thus sufficient to survive Bai's motion to dismiss."); *Brazil v.*

*Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *3 (N.D. Cal. Sept.

23, 2013) (holding that "Packed with Antioxidants" is a nutrient content claim).

Here, "good fats" represents to consumers that the fat content is "good for them" and

"healthy." This understanding is consistent with other sources, including the intent of

the Product's creator. F.A.C. ¶¶ 43, 91. Defendant intended to represent to consumers

that the Products are "healthy" and include "healthy fats," and Class Members relied

on this deceptive representation.

Puffery requires a two-step analysis. "[T]he principal issue when evaluating

claimed puffery is whether a consumer would rely on the challenged term. Whether a

term is easily defined or measured is secondary and merely informs the reliance

analysis." *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 968 (N.D. Cal.

2022). Defendant's incomplete analysis focuses solely on the secondary factor and

fails to conduct any analysis of the reliance factor. "A statement is considered puffery

if the claim is extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v.*

*Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). Here, Defendant's healthy

GOOD GUSTAFSON AUMAIS LLP

fat focused representations are intended to induce consumer reliance. Defendant places "GOOD FATS" in capital letters in a large font on the front of the Product. Prominently featured nutrient content claims motivate consumer purchasing decisions. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 481 (7th Cir. 2020) (citing FDA guidance and multiple academic studies showing that front label claims motivate food purchases). The FDA has always considered nutrient content claims – like "good fats" –  to be "a marketing activity." 56 Fed. Reg. 60372 (1991) (they are a "marketing activity rather than as a tool for educating or assisting consumers in planning a healthy diet."). Defendant uses nutrient content claims as a marketing tool to induce consumer reliance. A review of the first and "principal" factor cements that "good fats" is not puffery.

Shifting focus to the secondary factor fails to change this conclusion. While "good" may not have an easy definition, its combination with a nutrient creates a nutrient content claim. Words like "nutritious," "wholesome," "best choice," and "good for you," while not easily defined, are not puffery and can be implied nutrient content claims in some circumstances. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1078 (N.D. Cal. 2017). The puffery analysis does not focus on words in isolation. *Jones v. Nutiva, Inc.*, 2017 WL 3617104, at *3 (N.D. Cal. Aug. 23, 2017) ("Defendant's product labels—such as characterizing [product] as 'nourishing' and a 'superfood'—contribute to the impression that the product is healthy.") ("*Jones II*").

Even if a statement could be deemed puffery in isolation, courts review the packaging and deceptive context as a whole. Each statement contributes to the deceptive context of the packaging as a whole. *In re Milo's Dog Treats Consol. Cases*,

– 10 –

Plaintiffs' Opposition to Defendant's Motion to Dismiss Complaint
*Ryan, et al, v. The Good Fat Co. Ltd.*, No. 3:22-cv-03391-VC

9 F. Supp. 3d 523, 532 (W.D. Pa. 2014) (citing *Williams*, 552 F.3d at 939 n. 3.) ("even if Defendants' statements... that they are 'good for pets,' constitute puffery standing alone, those statements contribute 'to the deceptive context of the packaging as a whole.'"); *Jones v. Nutiva, Inc.*, 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016) ("better than butter" is actionable in context of the entire label.) ("*Jones I*"). For example, "'nutritious' has been held to be actionable because it contributed 'to the deceptive context of the product' that was created by the more-specific allegations of falsity. *Hadley*, 273 F. Supp. 3d 1052, 1089. Additionally, while a phrase like "great start" might be viewed as puffery in isolation, it has been ruled actionable based on the deceptive context of the product as a whole. *Coe v. Gen. Mills, Inc.*, 2016 WL 4208287, at *6 (N.D. Cal. Aug. 10, 2016). Here, while "good" could be seen as puffery in isolation, when it is combined with "fats" and supported by numerous additional nutrient content claims, it is no longer puffery.

Viewing the "good fats" representation and the Product's packaging as a whole– encompassed by nutrient content claims and no disclosures – represents to consumers that the Product is a healthy snack consisting of healthy fats. This interpretation is consistent with Defendant's intent. Plaintiff's claims are not premised on mere puffery.

    2.    **Claims premised on the "Good Fats" representation are not preempted.**

Plaintiffs' claims are not preempted. Rather, they are consistent with federal regulations and interpretations by federal courts. As outlined herein, the Product's label represents to consumers that the Product contains healthy fats and is healthier than competing products. This interpretation is not novel and rather it has been

– 11 –

GOOD GUSTAFSON AUMAIS LLP

adopted from other courts in this District. *See , e.g., Jones I*, 2016 WL 5210935, at *7; *Jones II*, 2017 WL 3617104, at *3.The presentation to consumers that the Product consists of healthy fats despite primarily consisting of unhealthy saturated fats is deceptive and misleading. This causes the Product to be misbranded because "its labeling is false or misleading in any particular." *See* 21 U.S.C. §§ 343(a).

The states' power to protect its citizens from deception is a traditional state police power. In *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 146 (1963), the High Court recognized that "neither logic nor precedent" leads to a distinction between the state's ability to protect the health and safety of its citizens and the state's ability to "prevent the deception of consumers." Additionally, "[w]hen determining whether federal law preempts state-law causes of action, [courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Soo Line R.R. Co. v. Werner Enterprises*, 825 F.3d 413, 420 (8th Cir. 2016). In other words, there is a "presumption against preemption." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013).  For over a century, states have been allowed to protect their citizens from deceptive practices in the food sector. *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control … it is the protection of the people against fraud and deception in the sale of food products."); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334–35 (3d Cir. 2009). Further, "[p]reemption doctrine should not be lightly applied, and **the burden is on the party seeking preemption to present a showing of conflict strong enough** to overcome the presumption that

GOOD GUSTAFSON AUMAIS LLP

– 12 –

state and local regulations can coexist with federal regulation." *Vanlaningham v. Campbell Soup Co.*, 492 F. Supp. 3d 803, 806 (S.D. Ill. 2020) (internal citation omitted) (emphasis added).

While Defendant is correct that the word "healthy" is not present on the packaging, that is not the only focus of the preemption analysis. Terms not defined by the FDA – like "good fats" - can act as nutrient content claims. *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 575 (N.D. Cal. 2013). Synonyms of the FDA-defined terms can form the basis of nutrient content claim based causes of action. *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1120 (N.D. Cal. 2013) (rejecting defendant's preemption argument and finding "natural source" and "found" to be synonymous with "good source," "contains," or "provides"). In other words, "[a] defendant cannot escape liability simply because it uses a synonym…." *Vassigh v. Bai Brands LLC*, No. 14-CV-05127-HSG, 2015 WL 4238886, at *7 (N.D. Cal. July 13, 2015) (discussing multiple synonyms including "packed with"). "The touchstone inquiry is whether the statement either expressly or implicitly characterizes the level of a nutrient in the product." *Id.* Here, the reference to "good fats" in large font combined with numerous other health-focused nutrient content claims, at a minimum, implicitly characterize the level of healthy fats in the Product.

The Product's entire label conveys to consumers that the Product is healthful, healthy, consists primarily of healthy fats, and is healthier than the competition. "Good fats" is the most conspicuous phrase on the Product's packaging and displayed in all capital letters. While a reasonable consumer interprets this as meaning "healthy" fat, the addition of multiple nutrient content claims confirms this

– 13 –

interpretation. These statements "taken individually and in the context of the label as a whole misleadingly imply that Defendant's Products are healthy." *Jones I*, 2016 WL 5210935, at *7. Nutrient content claims "contribute to the impression that the product is healthy." *Jones II,* 2017 WL 3617104, at *3. Each element plays a role in Defendant's deceptive dialogue with the consumer. *Jones I*, 2016 WL 5210935, at *7 ("The same is true of each statement Defendant purports to isolate and analyze on a stand-alone basis without considering the context of the label as a whole."). In its analysis of the Product's whole label, the Court will interpret "good fats" consistently with the Defendant's intent: "healthy fats." F.A.C. ¶ 44.

Defendant's preemption argument fails because there is not a strong conflict with the FDA regulations. Rather, the FDA regulations are consistent with the claims raised. *See* 21 U.S.C. §§ 343(a) (a food is "misbranded" if "its labeling is false or misleading in any particular."). The FDA has consistently been concerned with the use of nutrient content claims and fat representations when a product contains high levels of saturated fat. *See, e.g.,* 21 C.F.R. § 101.13(h).

In this case, the Complaint focuses on the misrepresentations made by the Defendant. Plaintiffs are not seeking to add labeling requirements. Rather, they are only seeking "to stop defendants from voluntarily adding deceptive language to the… labels." *Bell v. Publix,* 982 F.3d 468, 484 (7th Cir. 2020). On a similar issue, the Ninth Circuit stated, "If [plaintiff's] suit ultimately requires [defendant] to remove these allegedly misleading advertising statements from its product labels, such a result does not run afoul of the FDCA…." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015) (internal citations omitted). Preemption does not bar Plaintiffs'

claims from being addressed by the Court.

> ### 3. The claims based on the "Good Fats" representation are not premised on a substantiation theory.

Plaintiffs allege that the healthy representations of the Products are false rather than merely unsubstantiated. F.A.C. ¶¶ 54-74. When a complaint alleges that claims "are false," it cannot be dismissed by raising a substantiation attack on the complaint. *Jensen v. Natrol, LLC*, No. 17-CV-03193-VC, 2017 WL 11645769, at *1 (N.D. Cal. Sept. 22, 2017). These questions cannot be resolved at this stage. *Krommenhock v. Post Foods, LLC*, No. 16-CV-04958-WHO, 2018 WL 1335867, at *4 (N.D. Cal. Mar. 15, 2018) ("Whether or not Post's cereals are healthy—and whether their health and wellness statements are false or misleading—are questions that *cannot* be resolved at motion to dismiss stage, but may be resolved under a more stringent and evidentiary-based review at summary judgment.") (emphasis in original). In building this argument, Defendant makes numerous bold assertions without any evidence.[1] While Defendant attempts to argue its case in a Motion to Dismiss, this is not the proper stage. Even if it was the proper stage to present these arguments, the arguments would still fail because while Defendant is "on a mission to bring healthy fats back"[2] and has a Scientific Advisor that lacks any scientific degree,[3] the National Institutes of Health - among other authorities cited in the Complaint – warn that saturated fat is an "unhealthy fat."[4] At a minimum, these

---

[1] For example, "It is widely accepted that fats from nuts and fruit oils are healthier than fats from other sources…." Def. Brief at 9.

[2] F.A.C. ¶ 44.

[3] F.A.C. ¶ 73.

[4] F.A.C. ¶140.

arguments represent a dispute of fact, and Plaintiffs' claims cannot be dismissed at this stage.

> **D.    Claims related to marketing outside of the Product's label are relevant.**

In its brief, Defendant argues that Defendant's marketing is not relevant because the Court's review should be limited to solely the Product's label. Def Brief at 4 ("they are not relevant to whether the F.A.C. shows that the label is misbranded."). However,  "[t]hat contention rests on the erroneous assumption that a statement must be physically affixed to a product to constitute 'labeling.'" *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *7 n.12 (E.D.N.Y. July 21, 2010).

Labeling is defined to include "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). The definition of "accompanying" has been interpreted broadly to include statements not attached to the product itself. *See, e.g., Kordel v. U.S.*, 335 U.S. 345, 350 (1948) (no physical attachment between the label and product is necessary); *see generally* Louis Altman and Malla Pollack, 1A CALLMANN ON UNFAIR COMP., TRADEMARKS & MONOPOLIES § 5:9 (4th Ed.2009) ("The original distinction between labels and other advertising matter has ... been blurred ."); Sarah E. Taylor, and Harold J. Feld, *Promoting Functional Foods and Nutraceuticals on the Internet*, 54 Food & Drug L.J. 423, 446 (1999) (surveying case law and concluding "[i]f the matter is part of an integrated scheme to promote the product, with a readily discernible nexus between product sales and the matter, the representation will constitute labeling.").

– 16 –

Plaintiffs' Opposition to Defendant's Motion to Dismiss Complaint
*Ryan, et al, v. The Good Fat Co. Ltd.*, No. 3:22-cv-03391-VC

The marketing materials and schemes discussed by the Plaintiffs in the Complaint are relevant to the claims presented therein. This includes information presented by the Defendant that the "good fats" in the Product are healthy. *See, e.g.,* F.A.C. ¶¶ 38-41, 44(e).

### E.    Plaintiffs Have Standing for Injunctive Relief.

Plaintiffs would purchase the Products again in the future. F.A.C. ¶¶ 21-22. "Plaintiffs still wish to purchase healthy food products with good fats. They continue to see the Products at stores where they shop. Plaintiffs would purchase the Products in the future if the Products were as represented, but unless Defendant is enjoined in the manner Plaintiffs request, they will not be able to rely on Defendant's claims in the future." *Id.* This establishes sufficient standing for injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) ("Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."

Defendant's injunctive relief argument attempts to override binding Ninth Circuit precedent with cases from the Second Circuit. In reviewing Defendant's argument, "[s]everal courts have rejected similar arguments…" and found that consumers similar to Plaintiffs had standing under *Davidson*. *Moore, v. GlaxoSmithKline*, No. 20-CV-09077-JSW, 2021 WL 3524047, at *5 (N.D. Cal. Aug. 6, 2021):

– 17 –

Plaintiffs' Opposition to Defendant's Motion to Dismiss Complaint
*Ryan, et al, v. The Good Fat Co. Ltd.,* No. 3:22-cv-03391-VC

- *Moore*, 2021 WL 3524047, at *5 (N.D. Cal. Aug. 6, 2021) (consumer had standing for injunctive relief "even if Plaintiff is now aware of some synthetic ingredients, it is plausible that she would still be unable to rely on the Products' labeling in the future given her allegations that she cannot differentiate between synthetic and natural ingredients.");

- *Shank v. Presidio Brands, Inc.*, No. 17-CV-00232-DMR, 2018 WL 1948830, at *3 (N.D. Cal. Apr. 25, 2018) (rejecting similar argument where plaintiff "would like to buy [Defendant's] accused products in the future if they were reformulated to contain all-natural ingredients….");

- *Vizcarra v. Unilever United States, Inc.*, No. 4:20-CV-02777-YGR, 2020 WL 4016810, at *6 (N.D. Cal. July 16, 2020) (consumer had standing where "she purchased the [product] in reliance of its allegedly deceptive labeling and marketing, and that she would purchase the [product] in the future if it were truly flavored as labeled and advertised.").

"'In this light, [Plaintiff's] allegation satisfies *Davidson*'s first example of future harm. Because I can fairly interpret the complaint as alleging that [Plaintiff] would purchase the products again in the future if they were not misleadingly labeled, [Plaintiff] has sufficiently alleged standing to seek injunctive relief." *Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022). *See also Brown v. Natures Path Foods, Inc.*, No. 21-CV-05132-HSG, 2022 WL 717816, at *6 (N.D. Cal. Mar. 10, 2022) (finding standing for injunctive relief with similar allegations). Here, Plaintiffs have pled injunctive relief consistent with the requirements of *Davidson* and numerous courts within this District.

Plaintiffs' request for injunctive relief is consistent with Ninth Circuit precedent in *Davidson* and with numerous courts in this District. Therefore, Defendant's request for dismissal of injunctive relief should be denied.

### F. Plaintiffs Have Standing to Bring All Claims Because Defendant Confuses Potential Class Certification Issues as Standing Issues.

In both of its attacks on Plaintiffs' standing, Defendant mislabels class certification issues as standing issues.

First, Defendant claims that the Plaintiffs lack standing to bring suit concerning different *flavors* of the *same* products bearing the *same representations*. Defendant's argument is misplaced because Defendant confuses a class certification issue as a standing issue. As courts across the country have held, this "is a certification problem, not a standing one." *Garner v. Glob. Plasma Solutions*, 590 F. Supp. 3d 738, 743 (D. Del. 2022) (Bibas, J., sitting by designation).

Defendant's argument concerning unpurchased products presents no barrier to Plaintiffs' claims at this stage. At this stage, the standard concerns the similarity of the misrepresentation. *Brown v. Hain Celestial Grp.*, Inc., 913 F. Supp. 2d 881, 891 (N.D. Cal. 2012) (holding that plaintiffs had standing in part because "common misrepresentations [were] the crux of [their] case."); *accord Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013) (analysis is focused on whether "the products and alleged misrepresentations are substantially similar."). Defendant sells the Product offered in a variety of flavors. The Product is sold in similar packaging with similar representations and omissions regardless of flavor. *See* FAC, ¶¶ 28-33. Minor variances in each flavor's composition does not override the similarity. The focus is on the similarity of the representation - not minor variances in the lie.

GOOD GUSTAFSON AUMAIS LLP

*Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800, at *4-5 (N.D. Cal. Dec. 28, 2012) (finding that the presence of substantially similar representations was the "most important[]" factor in deciding to allow claims for products other than those purchased by named Plaintiff). For example, if a store sells fake gold, and one is actually gold-painted lead, another is gold-painted titanium, and a third is gold-painted steel, the misrepresentation is the same. Here, all the Products make the "good fats" representation in combination with numerous nutrient content claims while containing high levels of saturated fat without making the mandatory disclosure statement. *See* F.A.C. ¶ 28. A slight variance in composition does not change these common misrepresentations.

This same argument has been routinely rejected by courts in cases in the Northern District and throughout the country:

- *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (Beeler, J.) ("The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.");

- *Munsell v. Colgate-Palmolive Co.*, 463 F. Supp. 3d 43, 52 (D. Mass. 2020) ("The majority view is ... that a plaintiff has standing to assert claims on behalf of putative class members relating to products that she did not purchase if plaintiff sufficiently alleges that the products and the alleged

GOOD GUSTAFSON AUMAIS LLP

misrepresentations are 'substantially similar' to the products plaintiff did purchase.");

- *Garner v. Glob. Plasma Solutions*, 590 F. Supp. 3d 738, 743 (D. Del. 2022) (Bibas, J., sitting by designation) ("A plaintiff may have a clear injury from one product. His ability to represent others who bought different products depends on how similar the products and claims are[.] ... That is a certification problem, not a standing one.").

Moreover, courts that have rejected this same argument involved far more products than a single product line like the case *sub judice*:

- *Shank v. Presidio Brands, Inc.*, 2018 WL 510169, at *1 (N.D. Cal. Jan. 23, 2018) (holding, in product-labeling case where plaintiff alleged that products contained unnatural synthetic ingredients, that unpurchased body wash, shampoo, and conditioner were sufficiently similar to purchased face lotion, face scrub, face wash, and shaving cream to give rise to standing);

- *Brown*, 913 F. Supp. 2d at 885–86, 892 (holding, in product-labeling case where plaintiffs alleged that products labeled "organic" contained significant concentrations of non-organic ingredients, that unpurchased baby powder, toothpaste, and hair cream were sufficiently similar to purchased facial wash, lotion, hand soap, shampoo, conditioner, and lip balm to give rise to standing).

Defendant's argument leads to a single conclusion: "In short, Plaintiffs have

Article III and statutory standing to pursue their claims despite not having seen or purchased all of the challenged products." *Davidson v. Sprout Foods Inc.*, No. 22-CV-01050-RS, 2022 WL 2668481, at *3 (N.D. Cal. July 11, 2022).

Second, Defendant attacks the Complaint's class definition by claiming that Plaintiffs lack standing. Defendant's attack on the Classes is symptomatic of the same disease: it confuses a class certification issue with a standing issue. Similarly, this argument should be rejected.

Rule 23(b) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(b). If there is a problem with the application of these laws, that could present difficulties at class certification. However, that does not impact an individual plaintiff's standing. Simply, "[a]ny problem with raising claims under several states' laws goes to the propriety of class certification, not standing." *Garner*, 590 F. Supp. 3d at 743.

Once again, courts throughout the country – within this District and across multiple circuits – have rejected Defendant's argument.

- *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 555 F. Supp. 3d 829, 888 (N.D. Cal. 2021) (Koh, J.) ("Whether Class Plaintiffs are typical representatives of such individuals—or whether all these individuals together satisfy Rule 23(b)(3) predominance—is a question for class certification.");

- *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93 (2d Cir. 2018) ("[W]hether it is proper for a class to include out-of-state, nonparty

GOOD GUSTAFSON AUMAIS LLP

class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)");

- *Morrison v. YTB Int'l, Inc.,* 649 F.3d 533, 536 (7th Cir. 2011) (explaining that whether plaintiff could bring putative class action on behalf of out-of-state class members "ha[d] nothing to do with standing, though it may affect whether a class should be certified—for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be");

- *Mayor of Baltimore v. Actelion Pharma. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021) ("Since those counts of the complaint define class members' claims, they may be considered in determining whether the plaintiffs' claims raise 'questions of law or fact common to the class' and whether these are 'typical of the claims or defenses of the class....'").

Defendant's mistimed attacks on class certification issues present no hurdle to Plaintiffs' standing to bring the claims present in the Complaint.

## IV.     CONCLUSION

Plaintiffs respectfully ask that the Court deny Defendant's Motion to Dismiss the Complaint. To the extent that the Court determines any claim is deficient, Plaintiffs respectfully request leave to amend pursuant to Fed. R. Civ. P. 15.

Dated: January 25, 2023

Respectfully submitted,

GOOD GUSTAFSON AUMAIS LLP
/s/ J. Ryan Gustafson
jrg@ggallp.com
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel.: (310) 274-4663

THE KEETON FIRM LLC
Steffan T. Keeton, Esq.*
stkeeton@keetonfirm.com
100 S Commons, Ste. 102
Pittsburgh, PA 15212
Tel.: (888) 412-5291

SHENAQ PC
Amir Shenaq, Esq.*
amir@shenaqpc.com
3500 Lenox Rd. Ste 1500
Atlanta, GA 30326
Tel: (888) 909-9993
*Pro hac vice forthcoming

Counsel for Plaintiffs and the Proposed Class

– 24 –

Plaintiffs' Opposition to Defendant's Motion to Dismiss Complaint
Ryan, et al, v. The Good Fat Co. Ltd., No. 3:22-cv-03391-VC

GOOD GUSTAFSON AUMAIS LLP

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January, 2023, a true and correct copy of this Memorandum was filed with the Court via the Electronic Case Filing System, and was served on all counsel of record through the same means.

<u>/s/ J. Ryan Gustafson</u>

J. Ryan Gustafson, Esq.